UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO P. BRANDON,

                Petitioner,                      Case No. 5:16-cv-11944
                                                                   Hon. John Corbett O'Meara

v.

CARMEN PALMER,

                Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of first-degree murder, MICH. COMP. LAWS § 750.316, and two counts of first-degree child abuse. MICH. COMP. LAWS § 750.136b(2). Petitioner was sentenced to life imprisonment for the murder conviction and concurrent terms of 10 to 15 years for the child abuse convictions. The petition raises a single claim: Petitioner's right to present a defense was violated by exclusion of a hearsay statement by the deceased victim's mother that she killed her child. The petition will be denied because Petitioner's claim is without merit. The Court will also deny Petitioner a certificate of appealability and deny him permission to proceed on appeal in forma pauperis.

I. Background

The charges against Petitioner and his girlfriend, Nicole Roberts, stemmed from events occurring between September 21, 2011, and December 5, 2011, and involved their

twin sons, Kayden and Cameron Brandon, who were then about two and one-half months old. Kayden died on December 5, 2011, from asphyxiation and blunt force trauma to the chest. The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals in its opinion affirming Petitioner's convictions, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Medical examiners testified that the two children in question sustained multiple injuries, including fractured bones and ribs, severe bruising and swelling, deep hemorrhages, and internal bleeding. . . .
>
> The prosecution presented substantial evidence that defendant caused these injuries when he physically abused his children—and that he intended to harm his children in so doing. The medical examiners noted that the injuries sustained by the infants are rare in children that cannot walk, and that, given the amount of force it would take to inflict such injuries, it was extremely unlikely the injuries occurred by accident. Defendant had ready opportunity to abuse his children because he was one of their primary caretakers five days per week, and their sole caretaker at night. Moreover, defendant admitted that he committed abuse—included, but not limited to, biting the children, placing his hand over their mouths for an extended period of time, and punching his infant's chest in an attempt to make the baby quiet. [n.1 During an interrogation, defendant speculated that it was this last action that caused one of his children to die.] And the jury heard testimony from a witness that said she had seen defendant engage in both physical and verbal aggression toward the children.

*People v. Brandon*, No. 317568, 2014 WL 6468190, at *2 (Mich. Ct. App. Nov. 18, 2014).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate brief raised the following claims:

> I. The prosecution's evidence was insufficient to prove beyond a reasonable doubt that Brandon committed the crimes of felony murder, with first-degree child abuse as the predicate felony, or that he committed the two counts of first-degree child abuse, thus rendering those convictions constitutionally defective under the Fourteenth Amendment and Const. 1963, Art. 1, §17, and, further, the trial court's denial of a motion for directed verdict was an abuse of discretion.

II. Brandon was denied his Constitutional due process rights to present a defense, under the Fourteenth Amendment and Const. 1963, Art. 1, §17, where evidence of another's guilt was prohibited from use at trial.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *Id.* Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Brandon*, 863 N.W.2d 62 (Mich. 2015) (table).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

3

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

### III. Discussion

Petitioner claims that he was denied his due process right to present a defense when the trial court prohibited him from presenting an out-of-court statement by Roberts that she killed her child. The Michigan Court of Appeals found that Petitioner abandoned the claim on appeal because it was inadequately briefed. The state appellate court found in the alternative that the claim was without merit. Petitioner's claim does not merit habeas relief because the state court's alternative decision that the claim lacked merit did not involve an unreasonable application of clearly established Supreme Court law.

An accused has the right to present his own witnesses and evidence to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); see also *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the

4

Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane*, 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998)(quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Furthermore, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. A habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." See *Rockwell v. Yukins*, 341 F.3d 507, 511-12 (6th Cir. 2003). Additionally, "the Supreme Court has made it perfectly clear that the right to present a 'complete' defense is not an unlimited right to ride roughshod over reasonable evidentiary restrictions." *Id.* at p. 512.

Here, the Michigan Court of Appeals decision that the trial court properly excluded

5

the proffered hearsay statement did not involve an unreasonable application of clearly established Supreme Court law. The issue arose at an October 12, 2012, pretrial hearing. At the time Roberts was a co-defendant and likewise faced criminal charges arising out of her child's death.[1] Defense counsel described the circumstances under which Roberts' statement was made:

> Just so the Court is aware the statements the defense seeks to admit was made by the co-defendant in this case.
>
> And at the time the co-defendant made this statement she was not in custody, not *Mirandized* and was at the hospital as she was the individual that went in the EMS trunk to emergency with the soon to be deceased twin.
>
> When she's at that hospital she is approached by officer Sergeant Dolly and is asked in essence what happened.
>
> The statement the defendant seeks to admit says according to Sergeant Dolly's PCR I asked her about this statement she made.
>
> She stated that she had she wanted to make Kaden's death sound like an accident. She indicated that she had put her hand over Kaden's mouth and a blanket over his head and stopped him from crying.
>
> Thus she killed her son. We are seeking to admit that statement as a statement against penial interest.

Dkt. 9-5 at 3-4.

The prosecutor responded by indicating that the statement at issue was only one of several statements made by Roberts:

> There were three statements made by Ms. Roberts. Ms. Michon [defense counsel] wants to pick and choose which statements of Ms. Roberts she wants to use.
>
> But I think it's important to understand how many statements were

---

[1]Co-defendant Roberts ultimately pled guilty on June 11, 2013, to second-degree murder and one count of first-degree child abuse. See Dkt. 9-14, at page ID 53.

> made [and] what exactly was said because that's part of the legal analysis.
>
> So she makes the baby [] is pronounced dead at approximately 5:00 am on December 5th. On December 5th at approximately 8:53 am is the statement that Ms. Roberts makes at the hospital that Ms. Michon wants to introduce to her jury.
>
> Once again we have separate jurors in this case.
>
> \* \* \*
>
> [W]hat she says is she tells Sergeant Dolly at the hospital she voluntarily tells him she physically covered the victim's face with a blanket for 30 seconds and caused the victim to stop breathing. She states that verbally and then again in writing at the request of Sergeant Dolly.
>
> But what Ms. Michon does not tell you is minutes later after she gives that statement she retracts it and she tells Sergeant Dolly to rip it up it wasn't true.
>
> So minutes later she retracts that statement. Later that day approximately at 2:45 pm she made an additional statement at Westland police department and then she is polygraphed at the Dearborn police department and on December 6th at approximately 4:30 pm the next day that [] she gives a post-polygraph interview at that time as well.
>
> In both of those subsequent statements the second one on the December 5th and the one as part of the post-polygraph on December 6th Ms. Roberts retracts her original exculpatory (sic) assertion.
>
> She says that wasn't true and she assigns blame solely on the defendant, Mr. Brandon. So I know that Ms. Michon makes –
>
> The Court: Excuse me are the results of the polygraph involved?
>
> The Prosecutor: No the original statement that she made at the hospital she retracts that statement she said I remember I said this it wasn't true it's all his fault.

Id., at 9-10.

The trial court found that Petitioner could not admit the single inculpatory statement made by Roberts:

7

> Well, my initial response on this is that if the original statement comes in all of it comes in because it explains it's a continuation of her version of events and with what happened. It should all go before the trier of fact. The issue is it trustworthy? I look at all of the surrounding circumstances it appears to this Court it is not trustworthy and the Court is going to deny it.

Id., at 18-19.

This ruling was made in accordance with Michigan Rule of Evidence 804(b)(3), which prohibits the admission of a statement against penal interest unless there are "corroborating circumstances clearly [indicating] the trustworthiness of the statement." MICH. R. EVID. 804(b)(3). To determine whether the state courts arbitrarily applied their rule of evidence it is useful to examine a the federal rule of evidence analog. See *Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010). In this case, that analog is Federal Rule of Evidence 804(b)(3)(B), which likewise requires that an exculpatory out-of-court statement against the declarant's penal interest be supported by "[c]orroborating circumstances [that] clearly indicate the trustworthiness of the statement." *United States v. Price*, 134 F.3d 340, 347 (6th Cir. 1998) (quoting *United States v. Hilliard*, 11 F.3d 618, 619 (6th Cir. 1993)). Factors to assess in determining whether adequate corroborating circumstances exist include the presence or absence of a close relationship between the declarant and the defendant, whether the declarant received *Miranda* warnings before speaking, and the existence of evidence suggesting that the declarant was attempting to curry favor with the authorities. *Id.* at 348.

The Michigan Court of Appeals found a lack of sufficient corroborating circumstances, reasoning:

> [I]t is apparent that the trial court properly excluded the statement as hearsay, because "circumstances clearly indicate[d]" that the statement was not trustworthy. MRE 804(b)(3). The girlfriend had a motive to lie when she

8

> made the statement, as defendant was her boyfriend and the father of her children. And she immediately retracted the statement after she made it, and made three subsequent statements that blamed defendant for the child abuse and murder. The trial court thus properly excluded her statement as hearsay under MRE 804(b)(3).

*Brandon*, No. 317568, 2014 WL 6468190, at *4-5.

That decision did not arbitrarily or unreasonably apply the limitations on the admission of out-of-court statements prescribed by the Michigan Rules of Evidence. Those rules are intended to enhance the likelihood that the evidence presented to a jury is trustworthy. When the declarant is not available to testify, as the non-testifying co-defendant here, her testimony could not be subjected to cross-examination, "the greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 158 (1970) (internal quotation marks and citation omitted). The state courts applied their evidentiary rule in a non-arbitrary manner. Nor was exclusion of the evidence disproportionate to the purpose the rule was intended to serve. The state court's decision therefore did not unreasonably apply clearly established Supreme Court law, and the claim is without merit.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473 (2000). The Court finds that reasonable jurists could not debate this Court's resolution of Petitioner's claims, and will therefore deny a certificate of

appealability. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because any appeal of this decision would be frivolous.

V. Conclusion

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

The Court further **DENIES** a certificate of appealability, and **DENIES** permission to proceed on appeal in forma pauperis.

**SO ORDERED.**

Date: February 10, 2017                         s/John Corbett O'Meara
                                                United States District Judge


I hereby certify that on February 10, 2017 a copy of this opinion and order was served upon the parties of record using the ECF system and/or first-class mail.

                                                s/William Barkholz
                                                Case Manager